### MORGAN'S L. & T. R. & S. S. CO. v. MORAN et al.

#### (Circuit Court of Appeals, Fifth Circuit.   November 21, 1898.)

#### No. 552.

**1. RAILROADS—SALE UNDER FORECLOSURE—RIGHTS OF PURCHASERS.**

Where a decree for the sale of a railroad in foreclosure proceedings requires the purchasers to pay all valid claims outstanding against the receiver, growing out of the operation of the road by him, such payments are a part of the purchase price, for which the purchasers receive full equivalent in the property conveyed; and they are not entitled to be subrogated to the rights of the holders of claims against the receiver so paid, as creditors of the mortgagor company.

**2. SAME—RIGHTS OF MORTGAGEES—EFFECT OF DECREE AS ADJUDICATION.**

At suit of a creditor of a railroad company claiming an equitable lien on its property, a receiver was appointed, who took possession of all its property. A cross bill was filed by a mortgage trustee, under which the mortgage was foreclosed. By the final decree the road was ordered sold, and the outstanding claims against the receiver first paid from the proceeds. Certain lands owned by the railroad company, but not used in connection with its road, had been taken possession of by the receiver, and, because of a dispute between the parties as to the liens thereon, the receiver had been directed by the court to keep the proceeds arising from sales of such lands in a separate fund; and it was determined by the decree that neither the complainant nor cross complainant were entitled to a lien upon the lands or fund, but each was given leave to levy on any property in the hands of the receiver, not subject to their liens, to satisfy any deficiency remaining due after sale of the road. *Held*, that such decree was an adjudication, binding upon the mortgage trustee and the bondholders whom it represented, as to the fund from which claims against the receivership should be paid, and which precluded the bondholders from afterwards asserting a lien upon the land fund upon the ground that they were subrogated to the rights of the holders of such claims, who should have been paid from that fund.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

Upon a bill filed by the Morgan's Louisiana & Texas Railroad & Steamship Company seeking to enforce an alleged equitable mortgage and lien, claimed to be paramount to all other liens, joint receivers were appointed in April, 1885, by the United States circuit court for the Northern district of Texas, of the property of the Texas Central Railway Company. Subsequently the Farmers' Loan & Trust Company of New York, which had previously made answer to the bill, filed a cross bill, and prayed for a foreclosure of two certain mortgages or deeds of trust represented by it, for default in the payment of interest on the bonds secured thereby; and such proceedings were subsequently had as that on April 12, 1887, a final decree was rendered, finding the mortgage bonds represented by the trust company to be a first lien upon the property mortgaged, and that the Morgan Company had an equitable lien upon the same property to an amount exceeding $750,000, "in all respects subsequent and subsidiary and junior to the lien of the mortgages or deeds of trust made to the Farmers' Loan & Trust Company." Contingent upon the nonpayment within a short time named of the amount due the trust company, a sale of the railroad property was ordered. By subdivisions 19 and 22 of the decree it was provided as follows: "(19) And it is further ordered, adjudged, and decreed that if the proceeds of the sale of the property above directed to be made shall not be sufficient to satisfy the sum herein adjudged in her favor of the Farmers' Loan & Trust Company, trustee, and in favor of Morgan's Louisiana & Texas Railroad & Steamship Company, the said complainant, Morgan's Louisiana & Texas Railroad & Steamship Company, and the said cross complainant, the Farmers' Loan & Trust Company,

are hereby declared to have a personal judgment and decree against the said Texas Central Railway Company for the balance that will remain due to them, respectively, over and above the proceeds of the said sale, and shall have execution in due form of law for the balance due them, respectively; and leave is hereby given to the said complainant and cross complainant to levy the said executions upon the property of the defendant now in the hands of the receivers, if any, not subject to the mortgages above mentioned, and to sell the same in due form of law, and to apply the proceeds of the same to the satisfaction of the said balance due them, respectively." "(22) It is further ordered, adjudged, and decreed that any party to this cause, or the receivers or master commissioners herein appointed, may apply to the court for such orders necessary for the carrying of this decree into execution as equity and the nature of the matter may require." An appeal to the supreme court of the United States delayed proceedings under the final decree until the affirmance of such decree (137 U. S. 171, 11 Sup. Ct. 61), and it was not until April 22, 1891, that a sale of the road was had; and the property was purchased by Charles Moran and others, trustees representing the holders of all but a few of the outstanding first mortgage bonds.

Among the assets of the railroad company taken possession of by the joint receivers were "certain town lots, and certain sites, organized and unorganized, along the line of the railway." In January, 1886, upon the petition of the receivers, representing that there was some controversy between the complainant and the defendants as to whether these town lots and tracts were included in any of the mortgages upon the railway property, it was ordered by the court, with the consent of all parties to the litigation, that the joint receivers sell such real estate from time to time, and execute deeds therefor, and "hold the proceeds of such sale in a special fund apart from the other receipts and revenues of the company coming into their hands, and abide the final decree of the court, or such further orders as the court may render in the premises." It is conceded that the real estate referred to, and its proceeds, constitutes the property to which reference is made in the nineteenth paragraph of the final decree, and that such property was not covered by the mortgage liens either of the Morgan Company or of the Farmers' Loan & Trust Company. It appears by the evidence that up to December 17, 1894, the receivers had realized from the land-fund (as it was termed) collections more than $90,000, and that about one-half of this sum had been disbursed by the receivers for the general expenses of operating the road; and, on the final discharge of the receiver having charge of this land fund, a cash balance of about $42,000 was paid into the registry of the court. From time to time following the sale to the purchasing trustees, sundry orders were entered as to the cash payments to be made by the purchasers on account of the purchase price of the road, and as to a transfer of the railway property to the purchasers subject to the liens for unpaid expenses of the receivership, such as receivers' certificates, counsel fees, etc. Of a first payment of $25,000 deposited with the master commissioners by the purchasing trustees for payment of sundry expenses, the evidence shows that $1,531.80 still remains, undisbursed, in the registry of the court. No levy was made upon the funds in the hands of the receivers from the land-fund collections; nor was any application made to the court in respect thereto until April, 1895, when the purchasing trustees demanded the payment thereof to them on the ground that, representing the first mortgage bondholders, they were entitled, on the purchase of the road, to receive the same free from any expenses of operating the road by the receivers, and that, as they had been compelled to satisfy claims against the receivers which were a first lien upon all the property in their hands, the trustees were subrogated to the liens and claims of all said claimants, and, as against the Texas Central Railway Company and all other persons, were entitled to assert such liens against the fund in the registry of the court, which formed part of the fund which had been in the control of the receivers. They also made claim to the $1,531.80 balance. Service of the cross bill was made upon the Texas Central Railway Company, which, however, made default; and the Farmers' Loan & Trust Company also defaulted, after having appeared and filed a demurrer to the cross bill, which the court overruled. On the other hand, the Morgan Company appeared, filed

a demurrer, and, after it was overruled, answered the cross bill; asserting, in substance, that the final decree of April 12, 1887, was res judicata as to the rights of the first mortgage bondholders in the land-fund collections, and that such first mortgage bondholders under the final decree of April 12, 1887, possessed, at best, only the rights acquired on their behalf by their original representatives, the Farmers' Loan & Trust Company, and that they could not by reason of the provisions of the nineteenth clause of said decree assert, as against the Morgan Company, a paramount right to the fund in question. On the hearing a decree was entered in favor of the purchasing trustees, specifically subrogating them to the claims and liens for receivers' certificates and other expenses of the receivership, aggregating more than $85,000; and it was adjudged that the trustees, because of the payments made and the claims assumed by them, possessed a lien on the funds in the registry of the court, and on any amount which might be added thereto by reason of exceptions filed to the accounts of the receivers, and that such lien was superior to the claims of the Morgan Company and to those of the railway company and the Farmers' Loan & Trust Company; and the fund was ordered paid to the cross complainants, after deduction of costs and expenses. From the decree thus entered an appeal was taken.

E. B. Kruttschnitt, for appellant.

L. W. Campbell, for appellees.

Before WHITE, Circuit Justice, and NEWMAN and MAXEY, District Judges.

WHITE, Circuit Justice, after making the foregoing statement, delivered the opinion of the court.

As the railway company and the Farmers' Loan & Trust Company have made default, we are concerned only with the respective rights of the purchasing trustees, representing the first mortgage bondholders, and the Morgan Company, in the land-fund collections. The purchasing trustees assert a paramount lien by reason of the fact that the expenses of operating the road under the receivership were made a lien upon all the property in the hands of the receivers, and were prior to the lien of the first mortgage, and that as they were obliged to pay or assume such lien, as a condition of receiving the property, to the extent of such payment or assumption they are subrogated to the rights of the original holders of such claims against any property of the railroad company which during the receivership passed into the custody of the receivers.

Considered solely in their capacity as purchasers, this claim of the purchasing trustees is without merit. Their plain duty was to make payment of the purchase price. Obtaining the railroad property as the full equivalent therefor, they had no interest in the application of the proceeds of the sale, except to see that it had been used to cancel incumbrances upon the property, so that, as purchasers, they might receive the road free from all liens or claims.

Considered as bondholders, the claim advanced in argument is this: That as the railway company was the primary debtor for all claims asserted in the receivership, which had been given precedence over the claim of the bondholders against the proceeds of sale, they stood in the relation of surety towards such claims, and, by their payment out of moneys to which the bondholders were entitled as lien claimants, they were, in equity, subrogated to the rights of the original claimants, and entitled to have the assets in the custody of the court, through its

receivers, in the original cause, and not embraced in the mortgage security, applied in reimbursement. But, even though such a claim be ordinarily assumed to be sound, it cannot now be asserted. All the bondholders were before the court in the original suit, represented in the receivership proceedings by their trustee, the Farmers' Loan & Trust Company. They had their day in court as to the terms of the final decree, and, as the final decree shows, were then contemplating becoming bidders for the road upon the sale thereof. The time to have asserted the claim now advanced was before the entry of that decree, at which time, as now, the court had both funds in its control, and all claimants before it. Whether the claim was then made, or not, is now immaterial. The decree finally settled the rights of all parties, and the bondholders are concluded by its terms. It, beyond power of serious question, adjudged out of which fund payment of claims arising out of the receivership were to be made; and the decree can bear no other construction than that the court intended that the prior claims, when paid, should be absolutely extinguished, and should not be subsequently revived against the so-called "land fund." That the court did not intend by the final decree that there should be a resort by the bondholders to the land fund for reimbursement of any of the claims directed to be paid out of the proceeds of the sale is shown by an analysis of the terms of the decree, in connection with the character of the controversy. The bill filed by the Morgan Company in 1885, under which the receiver was appointed, was not a general creditors' bill. The Morgan Company had not obtained judgment upon its claim, but sought merely the enforcement of an alleged equitable lien upon all the property of the company, and the court assumed jurisdiction of the cause on that theory. So, also, the Farmers' Loan & Trust Company, when it filed its cross bill, prayed simply the foreclosure of the lien in its favor arising from the mortgages executed to it by the railway company. Besides praying for the appointment of a receiver of all the property, real and personal, "used for and pertaining to the operation of the railway," the Morgan Company asked that the receiver be required to take possession of, "all and singular, all town lots, by gift, purchase, or otherwise, and now owned, or that hereafter may be owned, on the line of railroads now owned and operated by the said railway company in the state of Texas." It is the proceeds of this latter property to which the purchasing trustees now assert a right.

Early in the litigation the attention of the court was called to the fact that there was a dispute between the parties as to whether these town lots, and other tracts of real estate not used in the operation of the road, were subject to the mortgages; and the receivers were ordered to hold the proceeds arising from the sale of such land in a special fund. The final decree adjudged that the lien of the Morgan Company arose only out of the pledge of certain mortgage bonds; that such lien only covered the same property which had been mortgaged to the Farmers' Loan & Trust Company; and it is conceded that the latter mortgages did not embrace the town lots and real estate referred to. Strictly speaking, therefore, objection might have been made, upon the settlement of the terms of the final decree, that the

court was without jurisdiction to administer upon and distribute this fund, as no case had been made entitling to any relief concerning it, and it might properly have been ordered restored to the Texas Railway Company. But as the fund, if surrendered to the owner, would have been subject to seizure under executions upon the deficiency judgments awarded to the Farmers' Loan & Trust Company and the Morgan Company, the decree,—seemingly without objection, for no question as to this was made on the appeal to the supreme court of the United States,—in paragraph 19, gave leave to the holders of the deficiency judgments against the railway company to levy those judgments upon any fund in the hands of the receiver. The nature of this fund, therefore,—the fact that it was not property which the parties during the litigation had the right to bring under the jurisdiction of the court,—affords good reason for inferring that the court manifestly intended to impose the expenses connected with the operation of the road solely upon the property used in such operation, and which was covered by the mortgages. Aside from the fact that the court did not direct that the bondholders should be subrogated against the land fund to any rights of the original claimants which had been awarded priority over the mortgages, conclusive evidence that the court did not intend that resort should be had against the land fund is contained in the provisions in paragraph 19 giving leave to the parties to levy their deficiency judgments on said fund. The land fund has realized only about $92,000. It was patent, in view of the enormous indebtedness upon the mortgages to the Farmers' Loan & Trust Company,—over $4,000,000,—that there was a strong probability that deficiency judgments much in excess of the assets in the hands of the receivers, not covered by the mortgages, would exist; and the court cannot be assumed to have intended the inconsistency of awarding leave to the Morgan Company to resort to this land fund, and be held to have at the same time contemplated that the bondholders might absorb the whole of the fund under the claim of a prior right to it from the circumstance that the proceeds of sale had been used, as directed by the decree, to pay the expenses of the receivership. Presumably, the legal title to the real estate of the railway company vested in the receiver at the time of, or subsequent to, his appointment. It is alleged in the answer of the Morgan Company to the cross bill in this proceeding, and not denied by replication, that after the rendition of the final decree it filed a certified copy thereof in all the counties in Texas in which the real estate in question was situated. It is nowhere alleged, however, nor does it appear by any evidence, that either of the parties holding deficiency judgments ever levied upon either the real estate or personal property in the possession of the receiver.

After the affirmance in 1891 by the supreme court of the United States of the final decree, and a sale of the road, the purchasing trustees made application to the court for relief as respects the possession of the property purchased by them, and the various orders entered thereon evidence the fact that the court considered such trustees as before it merely with reference to that property; and by an order dated November 4, 1891, it was expressly "ordered, adjudged, and de-

creed that this cause be, and the same is, retained and kept open, as to said purchasers, for the purpose of ascertaining and determining all claims, demands, and liabilities against said receivers growing out of the operation of said railways, or against said railways and other property hereinabove described, and to be surrendered to said purchasers, which have arisen or may arise out of said receivership." The final clause, giving leave to the purchasers or receivers to apply at the foot of the decree "for such other and further relief as may be just," in connection with the preceding paragraph of the order, makes clear the fact that the court regarded the orders as dealing only with the property purchased, and the rights and duties of the purchasers and the receivers in connection therewith. With those orders the Morgan Company had no concern, and cannot be injuriously affected thereby as to any right or interest it may have in the present fund. By the final decree of April 12, 1887, the court gave to the parties awarded deficiency judgments the right to proceed to enforce those judgments against the land fund. That fund, however, is still in the possession and custody of the court, presumably because it was found to be difficult, if not impracticable, to reach the fund in the manner indicated in the decree, and neither party has knowingly waived the assertion of a right to the benefit of the decree as respects that fund. We are of opinion that the purchasing trustees did not acquire any lien upon the fund by reason of the payment, as part of the purchase price of the road, of claims against the assets in the hands of the receivers. The railroad company, however, has abandoned all claim to the fund, and as there are no other claimants than the parties before the court, and as it is clear that the court below, by the final decree of April 12, 1887, intended to be guided by the maxim that "equality is equity," and designed to give the mortgage bondholders and the Morgan Company equal pro rata rights in this fund, we think the ends of justice will be subserved by a pro rata division of the land fund between the holders of the deficiency judgments.

An account should be stated, the net amount realized from the land-fund collections ascertained, and the same, after payment of all court costs and expenses, should be divided between the first mortgage bondholders (as succeeding to the rights of the Farmers' Loan & Trust Company in the deficiency judgment awarded by the final decree of April 12, 1887) and the Morgan's Louisiana & Texas Railroad & Steamship Company in the proportions of the amounts due upon each deficiency judgment. The bondholders should, however, be charged in the account as having received such portions of the land-fund collections which were used by the receivers in the operation of the roads, and which, though constituting a claim against the general fund in the hands of the receivers, were not repaid to the land fund out of the cash payments made by the purchasing trustees. Of the net amount coming to the first mortgage bondholders, the purchasing trustees should only be paid a pro rata share of the bonds represented by them, while the pro rata share of the holders of bonds not represented by the trustees should be retained in the registry of the court, subject to be claimed by the holders of such bonds. As to the $1,531.80 remaining in the registry of the court, of the $25,000 cash payment made by the

purchasing trustees, this amount clearly belongs to all the holders of bonds entitled to receive a dividend from the proceeds of the sale of the road; and the purchasing trustees are only entitled to receive such portion thereof as will be equal to the proportion coming to the holders of bonds represented by them; and the pro rata share owing to holders of bonds not represented by the purchasing trustees should be held in the registry of the court for those owners. The decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings in conformity to this opinion.